Okay, gentlemen, I guess we're ready to roll. This is the case of Sandra Tassel versus Jerry Karlik. 120-0845. You have before you myself, Justice James Fitzgerald Smith, Justice Nathan House, and not present and he will listen to the tape tomorrow. So, Justice Terry Levin, unfortunately, he's putting his dog down. So with that in mind, here's our procedures. Number one, the appellant goes first and he has 10 to 15 minutes. And we normally do not interrupt unless you get way off. Whatever. And then we ask questions. Then the appellee goes forward, has the same amount of time and then we ask questions. Then the appellant closes. With that in mind, you may proceed. Thank you, Your Honor. May it please the court. My name is Dan Feeney. I represent defendants, appellants, Jerry Karlik, Keith Giles, and Carville Blue Island LLC. We seek the reversal of the fee shifting award entered by the court last year. In this narrow appeal, we raise two independent legal questions. The first, is there an equitable exception to the American rule that would authorize a court to require a defendant to pay the plaintiff's legal fees, even when there is no statute or contractual agreement authorizing fee shifting? The second question is, does the derivative action provisions in the LLC Act, section 40-15, authorize fee shifting here? The answer to both questions is no. Because this is a purely legal question on appeal, because we do not re-challenge the court's legal authority to enter any fee award at all, and not its exercise of discretion, the de novo standard of review governs this appeal. Let's turn to the first and primary question. Is there an equitable exception to the American rule that allows the fee award here? This is the primary question because this equitable exception and not the statute is the basis for the circuit court's ruling. Starting point for any discussion of fee shifting is the American rule. Illinois is a long and loyal follower of that rule. In its 2000 decision, Morris v. Chapman v. Klitzman, the Supreme Court set forth the rule clearly and unequivocally. And I quote, absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own fees and costs, and may not recover those fees and costs from an adversary. Contrary to this definitive statement, the circuit court and plaintiffs contend there is a third equitable exception to the American rule, that plaintiffs can recover their fees under the common law, even when there is no statutory authorization or contractual fee agreement. They claim this equitable exception is based in the common fund doctrine. But the Supreme Court in Morris had something to say on that as well. And I quote again, the common fund doctrine does not authorize a party to shift fees to an adversary, but rather authorizes the spread of the fees among those who benefited from the litigation. Excuse me. There's no serious dispute that Morris is the definitive Illinois case on fee shifting in Illinois and definitive Illinois case on common fund doctrine. Despite this fact, and our heavy reliance and multiple citations to Morris in briefing below, the Supreme Court has not ruled that fee shifting must be done once. And Morris is not an isolated ruling. It's been applied and explained numerous times by the Supreme Court and by the Illinois appellate courts, including this court. In Wendling versus Southern Illinois Hospital, the Supreme Court reaffirmed the American rule in 2011. Confirmed fee shifting must be by agreement or by statute. It also went into more detail on the common fund doctrine, made clear that any fees that the plaintiff obtained in the litigation, and the Wendling Supreme Court went on to explain the justification for the common fund doctrine that's relevant here. It said the reason for the common fund doctrine is to prevent unjust enrichment by free riders, by those who benefit from the funds the plaintiff has recovered. So those people must contribute to the cost of the litigation. That's why the plaintiff's fees are paid from the common proceeds. So all beneficiaries share evenly. Shifting fees to defendants would not address that unjust enrichment issue at all. Even more recently in 2018, the Shad Diamond case, the Illinois Supreme Court weighed in again, unequivocally stated the American rule, prevailing parties are prohibited from recovering their attorney fees from the losing party absent express authorization by statute or by contract. There is no reference in any of those Supreme Court decisions to the third equitable exception that the circuit court and plaintiffs rely on here. This court has weighed in as well in its 2003 linker versus all state decision. It applied Morris, it discussed the common fund doctrine, and it expressly rejected what plaintiffs are attempting here, which is to use the common fund doctrine to assess fees against defendants. This is the quote from the application of the common fund doctrine is not appropriate in this case, because the attorneys seek to recover fees from the wrong parties, parentheses defendants, close parentheses, in deciding whether it possessed general equitable authority under the common fund doctrine to shift plaintiffs fees to defendants. In this case, the circuit court did not address or even acknowledge any of these cases. Instead, it relied on two preceded decisions of this court, which I'll return to in a minute. But the circuit court decision, and plaintiffs arguments are not really based on case law. The core justification the core for the circuit court, the core arguments made by plaintiffs is based on a very simple but very flawed, equitable argument. They argue that that that he shifting must be allowed here, that plaintiffs need fee shifting, to give it some remedy beyond the compensation of repayment of the misspent LLC funds that you must set aside the American rule to dissuade defendants from egregious and oppressive fiduciary breaches, and to provide plaintiffs with a full and fair equitable remedy. This argument is just wrong on the law. In this case, as in virtually every fraud or misconduct case, the plaintiffs had at their disposal, a multitude of legal and equitable remedies to dissuade misconduct and to remedy the fraudulent and oppressive conduct that the trial, the trial court describes. Now, I must note, as you know, from our prior appeal, we strongly disagree with the trial courts findings and with the hyperbolic characterization of defendants conduct. In fact, at the tail end of the briefing on this fee appeal, this court issued its ruling in our initial appeal, and it reversed some of the trial court's findings as against the manifest weight of the evidence. And in affirming the trial court's denial of a punitive damage request rule that defendant had no malicious intent. That's now the law of the case here. However, for purposes of this appeal, we accept the balance of the circuit court's findings regarding fiduciary breaches and oppressive conduct as true for so accepting those as true, let's discuss them. The circuit court and the plaintiffs recite a long list of discovery abuses. Now, most of those occurred before this case was reassigned to Judge Demacopoulos. It was originally before Judge Martin's and most occurred, most or all occurred under the tenure of our predecessor counsel. And even before Mr. Katie became personally involved in this case. But let's assume the truth of all of those discovery abuses. Illinois law already provides an adequate remedy for such conduct, discovery sanctions, fully consistent with the American rule, there is fee shifting provided in that context by statute. Under the Code of Civil Procedure and Rule 219, plaintiff had every opportunity to seek recovery for the fees they incurred as a result of any discovery transgressions. They had every opportunity to appeal to this court if those if those sanctions requests were denied, they don't need and did not need separate equitable exception to the American rule to deter abusive discovery practices. The balance of plaintiff's complaint involves fraudulent and oppressive fiduciary breaches. Illinois law provides many remedies for such conduct. For example, when an LLC member breaches a fiduciary duty to the court to strip it of its membership shares, and plaintiffs obtain that very forfeiture remedy here, the circuit court stripped defendants of their substantial membership interest in the underlying development LLC. This court affirmed that that was relief, not instead of but in addition to the compensatory damages requiring defendants to pay back with substantial interest the challenged expenses. That was a valuable remedy. Defendants forfeited a 53% stake in an LLC that at the end of the day had assets north of $4 million. In addition, Illinois common law provides the remedy for wayward fiduciaries under the disloyal servant doctrine. Under that doctrine, a court can dis gorge any compensation received by a disloyal fiduciary while they were breaching their duties. And of course, under Illinois, any victim of fraudulent and oppressive conduct can obtain punitive damages. In cases like this case, alleging commercial fraud and fiduciary breach, it's common for plaintiffs to cite to the legal fees they had to expend in order to bring the defendant's conduct in the line as a proper consideration and measure of punitive damages. Here plaintiffs went in a different strategic direction. Making no mention of their fees, they asked the circuit court for a punitive damage award of $12.6 million. That's more than 12 times all of the alleged misappropriations combined. Not surprisingly, the trial court rejected that request. This court affirmed. In addition to finding that defendant had no malicious intent. In this court's opinion authored by Justice House expressly noted that plaintiffs had already obtained the punitive remedy of defendant's LLC shares. So the law allows punitive damages to deter fraud and oppressive conduct. Plaintiffs requested a generous punitive award here. Whether the circuit court denied that request because plaintiffs had already obtained substantial relief of forfeiture, or because they found that plaintiffs were overreaching by asking for a 12 times multiplier on their punitive award, the remedy was equitable exception to the American rule. It was denied. That denial was affirmed by this court. It's the law of the case it's put to rest. plaintiffs may regret how they played their punitive damage hand in this case, but that is not a justification for this court to set aside the American rule. So to recap, under current Illinois law, without creating this new broad equitable exception that's never been recognized by the Supreme Court, there are multiple remedies and deterrents for the conduct plaintiffs complain of. There's discovery sanctions, there's forfeiture of LLC membership interest, there's disgorgement of any compensation paid, and there are punitive damages. This new broad equitable exceptions the American rule is not mandated by equity. Back to the case law, the two cases that allegedly support the fee award here. The circuit court, as I mentioned, ignored Morris and all of the cases citing it. It instead relied on these two older decisions of the court. One, the 1995 decision in last day versus Wiener. The other the 1970 decision, Ross versus 311 North Central. The trial court describes those two cases as providing the primary guidance in Illinois for fee requests on common fund derivative suits. Primary guidance. Last day was decided 27 years ago, has not been cited or followed since. Ross was decided more than 50 years ago. It was cited a handful of times in the 80s and 90s. And in virtually every case that was criticized and rejected. It has been followed exactly once in last day. There is no way to resolve those two isolated cases, which suggests that the common fund in a common fund dispute, sometimes the court can assess fees against the defendant rather than having them paid out of the proceeds of the litigation. No way to resolve those two cases with Morris, with Wendling, with Shad Diamond, or with Linker. The circuit court never tacitly conceded this point, because it never even attempted to reconcile those cases, it ignored all of them. Plaintiffs argue Ross and last day remain good law today, simply because the Supreme Court in Morris did not cite and expressly overrule them. We all know that's not how jurisprudence works. The decisions in Morris, and in Shad Diamond, and in Wendling control this case and preclude the relief they seek the equitable relief they seek. The second question is whether section 40-15 of the LLC Act separately authorizes fee shifting. Section 4015 is in the portion of the derivative claims. You know, that's claims where the LLC fails to bring a suit to protect its own rights. So a member brings the suit on behalf of the LLC. And by law, any recovery the plaintiff obtains in a derivative suit flows to the company, not to the plaintiff. In that context, section 4015 provides that when a derivative plaintiff is successful, and recovers some proceeds for the benefit of the company, the court can award that plaintiff reasonable fees, and quote, direct the plaintiff to remit to the LLC the remainder of those proceeds received by the plaintiff. Similar language to this is found in the derivative claims section of the Uniform Partnership Act, the Uniform Business Corporation Act. Parties are in agreement, there is no binding Illinois decision construing this specific provision of the LLC Act. But in every case, either party could find that construes this principle language found in similar statutes, Partnership Act of the Corporation statute, every single case found that the language does not authorize a fee award against the defendant, but only fee sharing. fee sharing is just the statutory codification of the common fund, where a plaintiff obtained a benefit for a larger group, and that larger group has to share in the fees it took to obtain that benefit. plaintiffs dismissively reject all of these cases as non-binding. That's because every one of them ruled against them. Not one of them ruled in their favor. Everyone, including the Supreme Court of Virginia, the highest court of New York, rejected their reading of this language, it's fully proper to consider this persuasive authority. And there is one more piece of persuasive authority that we need to add to those listed in the briefing. In preparing for argument over this weekend, we discovered a recent decision by the sixth division of this board, interpreting section 4015. This very provision of the Illinois LLC Act. That's an unpublished decision from this past March. So it's persuasive authority under the current version of Rule 23. The case is techno magnetic media versus Williams 2022 ill app 201138 dash you in paragraph 83 of that opinion, the court read section 4015 the same as every other key case interpreting that language finds that it means the derivatives plaintiffs fees are paid from the funds recovered. That case is not a fee shifting versus fee sharing case. It's a discussion about whether the recovery of a derivative plaintiff goes to the plaintiff or to the company. But it says specifically that the funds are recovered by the plaintiff, the plaintiff retains its legal fees under this provision of the statute, and then the balance is paid to the company. It bears noting that the circuit court did not base its fee award on section 4015 of the LLC Act. The circuit court expressly found that the statute was ambiguous as to whether the fees awarded to a defendant or from the proceeds the plaintiff received. Under the Illinois Supreme Court ruling in Shad Diamond, that ends the discussion. The Supreme Court held any statute purportedly authorizing fee shifting must be read narrowly, and any ambiguity resolved against fee shifting, because they are in derogation of the common law, in other words, because they are contrary to the American rule. We respectfully request this court reverse in its entirety, the fee award entered by the circuit court. Happy to answer any questions that justices might have. Nate. The judge in this case, which does she assess these fees against your clients personally because to be punitive? Or was it her intent to make the plaintiffs whole? The theory being that there's misconduct, obviously, the court trial court found misconduct and fraudulent conduct and misrepresentation oppressive conduct on behalf of your on the part of your clients, which we affirm. And the trial court said, well, these people were guilty of all this intentional misconduct. We have to make the plaintiffs whole, because if we allow the attorneys fees to be paid from the fund, it really does not leave them whole, they're out a substantial amount of money just to make sure that what was done wrong was put back. And they're still in the hole. So the so the is not based on punitive. As you know, you cite a number of cases, but basically based on reimbursement and that the data decision has not been overruled. Am I right? That last day versus wiener? Yes. So let me take thank you for those questions. I'll take them in reverse order. It is correct. So last day versus wiener held that even when there's no statute, and even when there's no contract, we can make the defendant pay the plaintiff's fees under the common fund doctrine. Now, no court has said under certain circumstances, they said if the party we assess any fees against has been oppressive, and fraudulent. And that's maybe why you don't see a lot of your clients were found to be oppressive and fraudulent. And that's and in order to correct that oppressive and fraudulent behavior, they had to go to court and hire a lawyer. And the court is saying we got to make them whole, we're not going to make them suffer. And they are suffering, even though there's no punitive, they are suffering, if they have to pay the attorney's fees to correct the fraudulent and oppressive conduct of your client. Well, I think the question there. So there have been many cases since last day. And in most, in many cases, when there's a derivative suit, or there's a common fund suit, there's fraud, there's fraud alleged. And in every case, when we have whether it's Morris, whether it's Wendling, whether it's Shad Diamond, the courts have said, there, the common fund doctrine is not a lot, you cannot use it to assess fees against defendant. Now, under your in terms of whether it's Remember, plaintiffs obtained a very valuable remedy, my clients own 53% of this underlying LLC. The court stripped them of that. This LLC had assets north of $4 million. The plaintiffs have been compensated in this case, that is not needed to make them whole. But you didn't, you didn't in your appeal, you don't argue the propriety of the award, you you basically ordering you arguing whether or not there was authority of the court to issue this attorney's award. Is that right? Yeah, we don't dispute that Mr. Katie and his firm reasonably spent $1.1 million in legal fees in prosecuting this case. We don't dispute that, that the amount of the award reasonably reflects the fees that were incurred. We argue that, and that the plaintiffs had to pay that this this challenge, this and fiduciary breach case. In every one, there are cases where, you know, if you have a helpless, unsophisticated retiree, who is defrauded maliciously by their financial advisor, there is no fee shifting in Illinois. There's, there's fiduciary breach remedies, the ones we talked about, their compensation can be stripped, any equity state they have can be stripped, and punitive damages can be levied. But there is no fee shifting. Under plaintiffs theory under the courts theory, this fee shifting, this fee shifting exception only exists under the common fund cases and only in derivative suits. Well, that doesn't make any sense. So you would have the widower who's been defrauded gets no fee shifting. But if a shareholder claims that their LLC was mismanaged, and the LLC brings the case directly, there's no fee shifting. But if the shareholder brings it as a derivative, then that person gets fee shifting. That doesn't make any sense. Either the claim was egregious enough to warrant some kind of additional remedy, punitive damages, or disgorgement, discovery sanctions, etc. All of that is available under the law, independent of whether it's a common fund case or a derivative case. It doesn't make any sense to carve out this, this exception, based only when the plaintiff is recovering a common fund or the plaintiff is, is bringing the suit as a derivative plaintiff and not on behalf and not as the company itself. So I just think that there are plenty of equitable remedies here, they obtained valuable equitable remedies here, legal and equitable, beyond just paying the funds back to the LLC, with substantial interest, which was done, they've received substantial additional remedy here, and they had even more available. That you do not need to create an exception to the American rule. And the Supreme Court, they said over and over, it has to be by contract or by statute, not once. Or if it's fraudulent or oppressive, then you can do it under your equitable powers. The Supreme Court knows what it's doing when it's issuing these blanket rules. It's not just ruling in one case, when it sets forth the definitive rule, that rule is come out thereafter. So I think it's unreasonable to assume that the Supreme Court when it said time and time again, you can only get fees when there's a contract or when there's a statute that the Supreme Court somehow meant, oh, but also if the equity requires it. Also, if the defendant's conduct is bad enough, then you can do it then as well. Like I said, there's other remedies, when the defendant has acted fraudulently and oppressively, that can make the plaintiff whole and can dissuade. They can do both. They were available here. Plaintiff's got some of them, not others. We do not need this brand new exception to the American rule, the Supreme Court has never ever recognized. I have no further questions. Thank you. Okay. Pauly, you may proceed. Thank you. May it please the court, Vince, Katie, on behalf of the plaintiff's appellees. The trial court's judgment on fees was quite extensive. For the first 25 pages of our opinion, Judge Demacopoulos recounted many of the fraudulent and oppressive acts employed by defendants. None of the cases cited by either side involves such egregious conduct. After dealing with some procedural issues in the opinion that are not at issue on appeal, the trial court cites to the Ross and Lazzard case and then spends the next 21 pages analyzing the equitable exception to the common fund doctrine and its application to the facts of this case. Ultimately, the trial court judge determined that there were 45 examples of fraudulent and or oppressive conduct that justified the use of the equitable exception to the common fund doctrine, such that defendants are personally liable to the plaintiffs for their attorney's fees. After that, she analyzed section 40-15 and determined it to be a fee shifting statute such that it also justified an award of attorney's fees in favor of plaintiffs and against defendants. As such, the trial court awarded plaintiffs attorney's fees on two separate theories. First, it determined plaintiffs are entitled to their attorney's fees under the equitable exception to the common fund doctrine. And second, in the alternative, it determined section 40-15 authorized defendants payment of attorney's fees in plaintiff's successive derivative claim. As for the first theory, the trial court properly found the equitable exception doctrine applies in this instance. Illinois courts recognize the exception to the fee sharing of a common fund based upon fraudulent or oppressive conduct. Some of those cases are the Ross and Lazzard cases that are in the briefs and have already been discussed. This particular district in Ross and last day held that attorney's fees could be assessed against the defendants in a derivative suit. After the trial court determines defendants conduct to be either fraudulent or oppressive. The last day court states and I quote, the Ross court found the defendants to have committed fraudulent and oppressive acts, thus warranting the assessment of plaintiffs attorney's fees and cost against them personally. Likewise, the trial court in the case at bar found that Wiener, Wiener's misappropriation of the corporate funds and his continuous refusal to return the funds to the corporate account warranted that Wiener be personally liable for the payment of last day's attorney's fees and costs. And last day, just like here, Wiener argued the trial court could not and should not assess fees against him personally, but instead they should be awarded out of the common fund. Ross illustrates what conduct warrants the application of vehicle equitable exception to the common fund doctrine. Here the trial court enumerated a litany of 45 examples of fraudulent and oppressive conduct that far surpasses anything described in Ross or last day. Ross involved only one fraudulent loan to a related entity. The loan was repaid with was repaid within two weeks of the suit being filed. There was no other misconduct alleged in Ross. Here, the trial court found at least two improper loans. And even though defendant gels admitted defendants knew at least seven months prior to the filing of the litigation, that the $150,000 loan to the coolest should be repaid. They refuse to do so. defendants did not agree to repay the improper coolest loan until after four years of litigation, forcing the plaintiffs to incur substantial attorneys fees and expenses. The fraudulent conduct and Ross did not include additional unwarranted payments, like the hundreds of thousands of dollars that were paid to the defendants related companies. Ross did not include a double commission of $100,000 paid to defendants company FMG, or the payment of defendants attorneys fees to document transactions that resulted in $750,000 being paid directly to the defendants. In court of appeals affirmed that attorneys fees award against defendants, and I quote, according to equitable rules and principles. The trial court here expressly found the 15 bi venture had been and I quote, wrought with defendants intentional misconduct while holding plaintiffs funds. And that and I quote, again, the list of defendants rob flex is shockingly long. If ever there was a case to apply the recognized equitable exception to the common fund be sharing doctrine, it is right here right now. Under the equitable exception to the common fund doctrine plaintiffs are entitled to an award against defendants for the reasonable attorneys fees, and defendants know this to be true. So their only argument is to contend the equitable exception recognized in Ross and last day among others has been overturned. However, the Illinois Supreme Court has never rejected the equitable exception to the common fund fee doc. defendants assertion that the holding and Morrisby Chapman the Kitzman categorically rejected Ross and last day is just plain false. No party and Chapman advocated for fee shift. As such, the equitable exception to the common fund fee sharing doctrine was not an issue in that case. The holding and Chapman may have rejected some cases and certain assertions, but the holdings and Ross and last day were not included in those assertions. By way of example, the opinion of Chapman noted that the first district held in the wolf case that the common fund doctrine cannot be applied outside the subrogation context unless the court has said has a segregated fund under its control. The cap the Chapman court stated and I quote, we reject this view. So the Illinois Supreme Court gave us an example of how they reject cases and assertions in those cases. By doing so with wolf. They did not do so with Ross and shepherd eyes the wolf case, the shepherds shepherd shows wolf is abrogated rejected by Chapman, then shepherd eyes last, last day shows no negative treatment whatsoever. Indeed, the court's decision in Chapman never even mentions Ross last day, or the equitable exceptions in the common fund doctrine. If the court is going to reject the theory or principle of the law, it at least has to mention them. Moreover, there is no all shifting outside of contracts or statutes. The check quite the contrary. In fact, the court merely states, Illinois generally follows the American rule. It doesn't say it only follows the American rule. In fact, the defendants breed contains a partial quotation for Chapman that omits the word general. The first district's decision and last name Ross contains similar provisions regarding general application of the American rule or the common fund doc. The last day court held, and I quote, as a general rule, attorney's fees and costs in such cases should be paid from the common fund. However, under the application of general rules and principles, defendants may personally be required to pay all the part of plaintiff's attorney's fees and costs. The Ross opinion makes similar references to general rules. However, in both those cases, they go on to hold the equitable exception to the common fund doctrine exists where there's fraudulent and oppressive conduct. Both cases held an award of fees can be levied against defendants directly. No Illinois court has ever ruled overruled last day or loss in these cases remain authoritative. In fact, in the defund tank case cited by defendants, the court specifically stated and I quote, the common fund doctrine is an exception to the American rule. And Ross followed that exception. Again, if there was ever a case to apply this principle, it is this case, because the trial court noted for you a non exclusive list of 45 different examples of fraud and oppression that applied in this case, thereby warranting an award of attorney's fees against the defendants directly. As you know, from the briefs, plaintiffs also contend the plain language is section 40 allows the fee shifting and an award of attorneys fees from defendants. As Mr. Feeney pointed out, no Illinois court has interpreted section 4515 with regards to be shifting. So this is a case of first impression. According to the SI securities case, the courts and I quote, primary objective in construing the statute is to give effect to that to the intent of the legislature, presuming the legislature did not intend to create absurd, inconvenient or unjust results. Interpreting fee shift a statute as fee shifting avoids an unjust result. As the court Mendez V. Taddeus Cicero pointed out litigation is expensive. I quote, it's no surprise the cost to pursue a contested claim will often exceed the amount of controversy. But that is the purpose of the shifting it ensures the meritorious claims are not abandoned because of the obtaining a minimal damages. In essence, fee shifting eliminates the possibility of petty tyranny. Reducing the award of plaintiffs in this case by over a million dollars will prevent plaintiffs from being made whole employing a fee sharing interpretation and thereby reducing the monetary judgment 14 attorneys fees harms the prevailing parties 15 bi and the plaintiffs. It helps only the defendants and it causes an unjust result. The SI securities case indicates the first consideration in interpreting statute is the plain language of the statute because it's the most reliable indicator of legislative intent. The plain and ordinary meaning of the language in the statute allows the court to make a reasonable award attorneys fees against the defendants in this statute, particularly since it avoids an unjust result. defendants argued the phrase shall direct plaintiffs to remit the limited liability company the remainder of those proceeds means fee sharing. However, the whole statute says if a derivative action is successful in whole or part or anything is received by the plaintiff, as a result of the judgment compromise or settlement of an action or claim the court may award plaintiffs reasonable expenses including attorneys fees, and that goes on into the phrase referred to by defendants. fee sharing is not what is meant by the statute. And that is not the case. In this regard, it simply means the remainder of the judgment, the monetary judgment in this case gets paid to the LLC, like in any other successful derivative action. The bottom line, the plain and ordinary meaning of the language in section 40 dash 15 allows for fee shifting. With regards to defendants other arguments in their brief or otherwise, defendants reliance on capital city Morton is misplaced. The trial court decision in that case is not persuasive for many reasons. One is a circuit court memorandum opinion, it interprets a different statute, the Uniform Limited Partnership Act, that statute has been repealed. And it's based on entirely different facts. Most importantly, as a trial court memorandum opinion is not binding on this court. As stated in Harvard State Bank case, a memorandum opinion of the trial court has no precedential value. Likewise, other state statutes cited by defendants are not persuasive either. The Illinois Limited Liability Act is a uniform statute as such defendants contend other states interpretation of their LLC acts are instructed. That said, other jurisdictions interpretations of different statutory language is not relevant. For example, Virginia case law discussing the Virginia Uniform Limited Partnership Act is completely irrelevant, because it's not interpreting the Uniform Limited Liability Company Act. Likewise, in New York case, discussing corporations opposed LLC has no bearing on interpreting the Illinois Limited Liability Company Act. The one statute they found that they had admittedly similar language was that in Arizona, but that statute has since been repealed and replaced. The new statute specifically states these are and I quote, paid from the recovery of the limited liability company. Indeed, in other states where the limited liability company provisions are interpreted as fee sharing, and not the shipping also have different statutory language than that of Illinois 40 dash 15. Those states expressly require payment of attorneys fees from the limited liability company or the recovery itself. An example of that is in the briefs, the Colorado's Limited Liability Company Act states in part and I quote, where the court finds the proceedings has resulting in a substantial benefit to the limited liability company, the court may order the limited liability company to pay the plaintiffs reasonable expenses, including attorney fees. Our statute, section 40 dash 15 in Illinois, does not include language stating the court may order the limited liability company to pay plaintiffs reasonable expenses, including attorney fees. If anything, the Illinois legislature's decision not to include that language or similar language in our version of the statute suggests it's intended for a different interpretation that a fee shipping. So in conclusion, plaintiffs request you to affirm trial courts decision for two reasons, and for the reasons outlined in the correct trial courts judgment. Number one, Ross and Lazard a permits a court to award fees against defendants if there's fraudulent or oppressive conduct. Here the trial court recited numerous examples of such conduct. Chapman and the other cases cited by defendants do not overrule last day. No party in those cases claimed or requested fee shifting. And it was not an issue in those cases. The equitable exception Ross and or last they are never even mentioned in the opinion in Chapman. And as such Ross and last day remain good law. With regards to the plain language of section 40 dash 15. We contended allows the fee shipping and it'll it allowed for fee shipping and award from defendants other states interpretation of different statutes is unpersuasive for the reasons we described. And as such, we request that you infer affirm the trial courts award because if there was ever a case that warranted a fee shifting based upon fraudulent oppressive conduct, it's this case before you today. Thank you. Nate. The the original judgment resulted in the defendants forfeiting their interest in the company. With that forfeiture, it was a very valuable asset with with that forfeiture, doesn't that kind of make the parties hold the value of that we do not judge, but I cannot sit here and recite to you a citation in the record that places a value on the company and that 53% interest because to my knowledge, it doesn't exist. I know Mr. Feeney was throwing around a $4 million number, but candidly, I'm not aware of that being in the record anywhere. And it's our contention that our clients are not made whole because they spent in excess of $1.2 million to get the case through trial and then subsequent to trial to go through the appeal process on two different issues. The merits of the original judgment that you're referring to and now the appeal on attorney's fees. So I can't say with a straight face whatsoever that my clients are being made whole. The argument is also made that the Supreme Court by implication has reversed Laszlo and Ross. I'm sorry, go ahead. I interrupt. No, go ahead. Well, in that regard, Chapman says Illinois generally follows the American rule and that it recites the American rule, which states that there is no fee shifting unless a contract or absolutely. Well, this is the law of the land, and it makes no all encompassing statement in that regard. More importantly, nobody in that case was requesting fee shifting. It wasn't an issue before the court, and it had every opportunity to go into an analysis of the equitable exception to the common fund doctrine if that was the intention. And I gave you the example of the Wolf case. There was an assertion that the common fund doctrine only applied in certain very limited circumstances, and the Illinois Supreme Court took that on directly and said we reject that assertion. And as such, that assertion was abrogated. We have nothing close to that from any case that's been cited by either party that says Ross and Laszlo is rejected or contravenes it. I'd have no further questions. Okay, Mr. Feeney, you may close. Thank you, Your Honor. So on this point, this notion that no court has ever called into question Ross or Laszlo before Morris was even decided this court in the Abreu case that we cite handled the request for fees from a defendant. It was a fraud and oppressive conduct derivative action claim just like this, and the plaintiffs cited Ross in that case. And this court in Abreu found that Ross had no precedential value, that its reasoning was deficient, that it relied on the case, that the case it relied on Lee did not allow for fee shifting at all, and wholly rejected Ross. Ross has been completely rejected and law. Now, is that the Supreme Court that did that? It was the first district. It was this court that did that. Well, that's one equal court, same court. It's not overruled. It's disagreed with, but not overruled. And the same way, when Laszlo then said, oh, we're going to count on Ross, Laszlo didn't try to overcome Abreu. Laszlo didn't even discuss Abreu and say Abreu was decided incorrectly. So you have two cases that do directly discuss Ross and directly reject the approach it took. Then, now you have the Supreme Court cases that followed, and you have the Linker case following Morris v. Chapman in this court, where a plaintiff specifically attempted to get fees asserted under the Common Fund Doctrine against the defendants. And the language was not equivocal. Let's look at what the Supreme Court said in Morris. The Common Fund Doctrine does not authorize a party to shift fees to an adversary. There's no wiggle room there. Then let's look at what the Supreme Court said in Chad Diamond. Prevailing parties are prohibited from recovering their attorney's fees from the losing party after an express authorization by statute or by contract. They didn't leave any daylight in there for some obscure, never cited appellate court case called Last Day that went out on a limb and assessed fees under equitable principles. Plaintiffs can't any other case other than those two. In the entire jurisprudence of this court, the hundreds of thousands of fiduciary breach and fraud cases that have been litigated in Illinois courts, they can't find any case other than those two that found that fraudulent and oppressive conduct authorizes fee shifting. In terms of the statute, there are differences between LLCs and corporations and partnerships, and those differences are meaningful in not meaningful at all in the context of a derivative suit, whether the derivative suit is brought by a shareholder of a corporation or a member of an LLC or a partner in a partnership. Those statutes and uniform statutes are functionally equivalent, and the language used in 4015 is identical as the language that was used in the case handled by the Virginia Supreme Court and the New York Court of Appeals. Every case, every single case that has considered that concludes that that statute does not allow fee shifting. Every case. Mr. Katie can point to there are other statutes that also don't allow fee shifting, and they're worded differently. That's great. There's 100 different ways to say the same thing, but when the legislature said this very thing, use this very language that's found in 4015, which is a uniform statute, which Illinois courts, when there's a uniform statute in play, are supposed to look to other states construing that uniform statute as guidance. Every single case finds there's no fee shipping. Finally, what plaintiffs challenge here about being made whole, that they had to spend fees to get the compensatory damages that they were entitled to. That argument applies in virtually every lawsuit brought in this country. They are challenging the American rule itself, and as I said, there are many cases alleging egregious conduct. The argument that this commercial dispute where some money was paid to a broker when it shouldn't have been, that this is the most egregious case Illinois courts have ever handled is a little bit ridiculous. Nobody was physically injured. Nobody was maliciously harmed. This very court in a ruling that is now the law of the case found that defendants had no malicious intent. The hyperbole is a little bit too much to bear, but even we assume there was fraudulent and oppressive conduct here. That happens in dozens and scores and hundreds of cases each year, and the American rule applies to all of them. The notion that we would need to create an exception here just based on common law equitable principles will do away with the American rule. It would blow a huge hole smack in the middle of it. It's not warranted, and it's completely completely inconsistent with the statements of the Illinois Supreme Court, which were not equivocal. Only when there's a statute or a contract, only when there's a statute or a contract. And as for common fund, common fund does not allow you to recover from defendants. Those statements, they didn't leave room for doubt. We think the Supreme Court has set forth the rules that govern here. We think the statute, every time it's ever been construed, has been found to be a common fund fee sharing statute. That should be the case here. When you say the remainder of the proceeds, obviously that means some portion of what you recovered from the defendant stays with the plaintiff, and some portion goes to the company. The language is clear. The Illinois Supreme Court has been clear. Any ruling affirming that the trial court and agreeing with plaintiff would really do away with the American rule as we know it. We ask that the court respectfully reverse the decision of the trial court awarding fees. Thank you both. You both made very in-depth presentations. We appreciate how clear both of you were on your positions, and the briefs were interesting and well done. And actually interesting enough that you could read them, even though I had to read them three times to fully understand them. So thank you both very much.